In re GREATER SOUTHEAST
COMMUNITY HOSPITAL
CORP. I, et al., Debtors.

Sam J. Alberts, Trustee for the DCHC
Liquidating Trust, Plaintiff,

v.

Arthur J. Gallagher & Co.,
et al., Defendants.

Bankruptcy No. 02–02250.
Adversary No. 04–10116.

United States Bankruptcy Court,
District of Columbia.

Feb. 21, 2006.

Ted A. Berkowitz, Farrell Fritz, PC, Uniondale, NY, Joseph R. Damato, Seyfarth Shaw, David Fisher, Assistant Attorney General, Tax, Bankruptcy and Finance Section, Peter D. Isakoff, Cleveland Lawrence, III, Holly E. Loiseau, Christopher R. Mirick, Weil, Gotshal & Manges LLP, Jeffrey W. Kilduff, O'Melveny & Myers LLP, Washington, DC, Deryck A. Palmer, New York, NY, Andrew M. Troop, Weil, Gotshal & Manges LLP, Boston, MA, for Debtors.

## OPINION AND ORDER RE MOTIONS TO DISMISS

S. MARTIN TEEL, JR., Bankruptcy Judge.

Seeking to avoid and recover various payments the debtors had made, the plaintiff, Sam J. Alberts, Trustee for the DCHC Liquidating Trust, commenced this adversary proceeding against Arthur J. Gallagher & Co. ("AJG").[1] He later amended

---

1. With exceptions of no relevance here, the confirmed plan in the jointly administered bankruptcy cases in which this adversary proceeding is pursued vested Alberts with the right to pursue claims that a trustee could pursue under sections 542 through 553 of the Bankruptcy Code (11 U.S.C.).

the complaint to add various insurance companies as defendants. Three of those added defendants (the "Added Defendants") seek dismissal based on the statute of limitations found in 11 U.S.C. § 546(a)(1)(A) which the court finds applicable and which bars the amended complaint unless it relates back to the filing of the original complaint.[2] The relation-back issue turns on the proper construction of Rule 15(c)(3)(B) of the Federal Rules of Civil Procedure.

### I

In both the original complaint and the amended complaint, Alberts pursues three counts: preferential transfers recoverable under 11 U.S.C. §§ 547 and 550; fraudulent conveyances recoverable under 11 U.S.C. §§ 544, 548, and 550; and unauthorized postpetition payments (payments that cleared postpetition even if transmitted by prepetition check) recoverable under 11 U.S.C. §§ 549 and 550. The critical element of each count for purposes of addressing the applicability of Rule 15(c)(3)(B) is § 550. If Alberts demonstrates that a transfer of any amount of dollars included in the payments that are the subject of this proceeding is avoidable under § 544, 547, 548, or 549, Alberts cannot make a recovery in that amount from a defendant unless he demonstrates the applicability of 11 U.S.C. § 550(a). In relevant part, § 550(a) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, ... 547, 548, [or] 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

When Alberts filed his original complaint, he believed that AJG was the "initial transferee" of each transfer. To the extent that AJG was not the "initial transferee" and instead was a mere conduit, Alberts now asserts that he made a mistake within the meaning of Rule 15(c)(3)(B) in naming AJG as the sole defendant in the original complaint.

The pertinent facts are these. Prior to the commencement of this adversary proceeding, Alberts' financial advisor, Neil H. Demchick, reviewed and analyzed information provided by the debtors relating to payments made by the debtors during the preference period of 11 U.S.C. § 547(b)(4). In particular, Demchick reviewed the information relating to the transfers that are the subject of this adversary proceeding. From his review of the records furnished, Demchick concluded that AJG was the sole transferee of the transfers. The information did not indicate that AJG was a mere conduit with respect to the transfers or that any of the transfers were intended for any of the Added Defendants or any other company.

■ On November 16, 2004, Alberts timely filed his original complaint, naming AJG as the sole defendant, which sought to avoid and recover pursuant to 11 U.S.C. §§ 544, 547, 548, 549, and 550, certain payments that the debtors made to

---

**2.** The added defendants seeking dismissal are Gallagher Healthcare Insurance Services, Inc., Safety National Casualty Corporation, and Fireman's Fund Insurance Co. The term "Added Defendants" as used in the balance of this opinion refers only to them as the other additional defendants have not sought dismissal.

AJG. On January 28, 2005, AJG filed an answer raising as a defense that it was not the "initial transferee" of the payments as required by 11 U.S.C. § 550(a) for the payments to be recovered from it. A recipient of a payment is not an "initial transferee" of the payment within the meaning of § 550(a)(1) if the recipient was serving as a mere conduit. *See Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey),* 130 F.3d 52, 59 (2d Cir.1997) (broker was mere conduit for payments made to insurance companies). To the extent of any dollars transferred as to which AJG was a mere conduit for an Added Defendant (for example, passing along insurance premiums less AJG's commission as an insurance broker), and thus not the "initial transferee," Alberts made a mistake in suing AJG instead of the Added Defendant to which AJG passed on those dollars as the true "initial transferee." However, to the extent that AJG was not a mere conduit as to any particular transfer (for example, to the extent AJG as an insurance broker retained a commission out of insurance premiums) and thus *was* the "initial transferee" of that transfer, Alberts made no mistake in suing AJG instead of the Added Defendants.[3]

On March 10, 2005, Alberts filed a motion to enlarge the time period for service of the summons and complaint under F.R. Civ. P. 4(m). On March 15, 2005, the court entered a bridge order enlarging the time period for serving the summons and complaint under Rule 4(m), and on April 13, 2005, the court entered a further order

that extended the time period under Rule 4(m) from 120 days to 210 days with respect to this adversary proceeding, among others.

On March 15, 2005, Alberts filed the amended complaint adding the Additional Defendants. On March 24, 2005, Alberts served a summons and the amended complaint on the Added Defendants.

The amended complaint retains AJG as a defendant and does not substitute the Added Defendants in place of AJG. However, Alberts points to his right to recover from the Added Defendants as the initial transferees to the extent that they (as opposed to AJG) are the initial transferees of the payments.

## II

Section 546(a)(1) of the Bankruptcy Code (11 U.S.C.), as relevant to this case, provides that § 550 complaints must be filed within (A) two years after the entry of the order for relief, in this case by November 20, 2004, or (B) within one year after the appointment of the first trustee under § 1104. Alberts argues that his claims against the Added Defendants are not time-barred because either Alberts, a plan-appointed trustee, enjoys the extended limitations period provided for under § 546(a)(1)(B), which did not expire until April 5, 2005, or alternatively, the amendment relates back to the date of the filing of the original complaint pursuant to Federal Rule of Civil Procedure 15(c). The court will first address why § 546(a)(1)(B) does not extend the limitations period for Alberts, as a plan trustee, to file avoidance

---

**3.** To the extent that Alberts now seeks recovery under § 550(a)(2) from an Added Defendant of a transfer for which AJG *was* the "initial transferee" on the basis that the Added Defendant was "[an] immediate or mediate transferee of such initial transferee [meaning AJG]," Alberts made no mistake in suing only AJG in the original complaint because AJG would, as the "initial transferee," indeed be liable.

actions in this bankruptcy case, and will then address the applicability to the amended complaint of Rule 15(c)(3) relation-back.

### A. Alberts, as liquidating trustee, is not a "trustee" within the meaning of 11 U.S.C. § 546(a).

■ Pursuant to the plan, Alberts assumed the duties of Trustee for the DCHC Liquidating Trust on April 5, 2004. Alberts argues that the limitations period for the trust to file § 550 actions in this bankruptcy case did not expire, pursuant to § 546(a)(1)(B), until one year after Alberts' appointment as plan trustee. The court rejects this argument as contrary to the plain language of the Bankruptcy Code. Alberts is a plan trustee and was appointed pursuant to § 1123. He was not appointed or elected under 11 U.S.C. § 1104 as would be required to render applicable the one-year extension of the limitations period provided for under § 546(a)(1)(B).[4] Accordingly, Alberts, as a liquidating trustee, is not entitled to invoke the extended limitations period provided for under § 546(a)(1)(B).[5]

### B. Pursuant to Rule 15(c)(3), the amended complaint relates back to the date of filing of the original complaint, except to the extent that AJG was an initial transferee.

■ In the alternative, Alberts argues that the amended complaint is not time-barred because it relates back to the date of the filing of the original complaint. Rule 15(c) provides, in pertinent part:

(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when . . .

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party

---

**4.** An appointment under 11 U.S.C. §§ 702, 1163, 1202, or 1303 would also satisfy § 546(a)(1)(B), but they were inapplicable to this case. The only provision specified in § 546(a)(1)(B) which could have resulted in the appointment or election of a trustee in this non-railroad chapter 11 case was § 1104. The court never entered the order required by that provision to trigger the appointment or election of a trustee. Moreover, § 1104(a) requires that the order for appointment of a trustee be made before confirmation of a plan: Alberts' position as trustee of the DCHC Liquidating Trust arose at the earliest upon confirmation of the plan. Finally, the confirmation of the plan terminated the estate, vesting the claims here in the DCHC Liquidating Trust, so there is no bankruptcy estate for a trustee of the type specified by § 546(a)(1)(B) to administer, with Alberts' compensation not

limited by, and not requiring court allowance under, 11 U.S.C. § 326.

**5.** See Barr v. Charterhouse Group Int'l, Inc. (In re Everfresh Beverages, Inc.), 238 B.R. 558, 573 (Bankr.S.D.N.Y.1999) (liquidating trustee appointed pursuant to plan under § 1123 not entitled to the one-year extension of the limitations period provided for under § 546(a)(1)(B)). See also Liquidation Estate of DeLaurentiis Entertainment Group v. Technicolor, Inc. (In re DeLaurentiis Entertainment Group, Inc.), 87 F.3d 1061, 1064 (9th Cir. 1996) (holding that an estate representative is not a trustee within the meaning of § 546(a)); Starzynski v. Sequoia Forest Industries, 72 F.3d 816, 821 (10th Cir.1995) (no statutory basis for concluding that plan-appointed liquidating agent is a trustee within the meaning of § 546(a)).

will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Thus, an amended complaint seeking to add an additional defendant will be permitted to relate back if it (1) arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) the added parties received notice of the action within the time period provided for under Rule 4(m) such that the parties will not be prejudiced in maintaining a defense; and (3) the added parties knew or should have known that they were proper parties but for the plaintiff's mistake.

1. The claim asserted in the amended complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original complaint.

██ The claims asserted against the Added Defendants "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The amended complaint seeks recovery of the same payments sought to be recovered under the original complaint on the same three legal theories as the original complaint. Thus, the court finds that the requirement of Rule 15(c)(2) has been satisfied.

2. The Added Defendants received notice of the institution of the action within the time period provided for under Rule 4(m) such that they will not be prejudiced in maintaining a defense on the merits.

██ According to the Added Defendants, they were served the summons and the amended complaint by first class mail on March 24, 2005, 128 days after the filing of the original complaint. Relying on Rule 15(c)(3), the Added Defendants contend that 15(c)(3) relation-back does not apply because Alberts failed to give the Added Defendants notice of the institution of the action such that they would not be prejudiced in maintaining a defense on the merits within *120 days* of filing the original complaint.[6]

Rather than expressly requiring that parties added pursuant to an amendment receive notice within 120 days of the filing of the original complaint, however, Rule 15(c)(3) instead requires that the added party be provided such notice "within the period provided by Rule 4(m) for service of the summons and the complaint." Although Rule 4(m) provides that service of the summons and complaint is to be made upon a defendant within 120 days after the filing of the complaint, that time limitation is subject to adjustment by the court. On March 15, 2005, a bridge order was entered in the main bankruptcy case in which this adversary proceeding is being pursued (DE No. 2486), followed by a final order on

**6.** Prior to December 1, 1991, Rule 15(c)(3) provided that "[a]n amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, *within the period provided by law for commencing the action against him,* the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have know that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." *See Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir.1996)(applying the pre-amendment version of Rule 15(c)). The court is mindful of this amendment, and took it into account when determining the relevance of cases decided under the pre-amendment rule.

April 13, 2005 (DE No. 2516), enlarging the time period under Federal Rule 4(m) and Bankruptcy Rule 7004 to effect service of process in this adversary proceeding. That extended deadline governs the Rule 15(c)(3) analysis currently before the court. *See* Fed.R.Civ.P. 15 advisory committee notes (1991)("In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule . . . ."). Accordingly, and because the Added Defendants were expressly notified by service of the summons and the amended.complaint of the institution of the suit within the time period allotted under Federal Rule 4(m) as extended by the court, the court rejects the Added Defendants' argument that they did not receive notice within the time period provided by Rule 4(m) for service of the summons and the complaint such that they would be prejudiced in maintaining a defense on the merits.

3. Alberts' failure to name the Added Defendants was a mistake within the meaning of Rule 15(c)(3), except to the extent that AJG was the initial transferee.

■ The critical question raised by the Added Defendants' motions to dismiss is whether Alberts' failure to name the Added Defendants constitutes a mistake within the meaning of Rule 15(c)(3)(B), as required for the amendment to relate back to the date of the filing of the original complaint. Alberts bears the burden of proof to demonstrate that his amended complaint meets the requirements of Fed. R.Civ.P. 15(c)(3). *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 35 (2d Cir.

1996). For reasons explained in more detail below, the court concludes that Alberts' failure to name the Added Defendants in the original complaint constitutes a mistake within the meaning of Rule 15(c), except to the extent that he proves not to have been mistaken that AJG was the initial transferee.

(a) The fact that AJG remains named as a defendant in the amended complaint does not preclude the amended complaint from relating back to the original complaint.

■ The Added Defendants urge that there can be no relation-back under Rule 15 unless the new defendants substitute an existing defendant. Similarly, the Added Defendants take the position that for Rule 15(c) relation-back to apply, any alleged mistake must run to the entirety of the claim originally asserted against AJG and result in AJG's absolute displacement from this adversary proceeding. The Added Defendants further reason that because it is undisputed that AJG was the initial transferee with respect to certain portions of the alleged preferential or fraudulent transfer attributable to brokerage commissions, AJG was a proper defendant in this action at least to that extent, and Rule 15(c)(3) is therefore unavailable to save any of Alberts' untimely claims against the Added Defendants, not just unavailable to save Alberts' claims relating to transfers for which AJG *was* the initial transferee.

Some courts have, indeed, held that an amendment seeking to add an additional defendant can only relate back under Rule 15(c)(3) if the new defendant replaces an existing defendant. This is the law in the Sixth Circuit,[7] has been construed to be

---

7. *See Leitch v. Lievense Ins. Agency, Inc. (In re Kent Holland Die Casting & Plating, Inc.)*, 928 F.2d 1448, 1449 (6th Cir.1991) (chapter 7 trustee could not amend avoidance action to

the law in the Fourth Circuit,[8] and has been applied by some in the Third Circuit.[9]

Notwithstanding the narrow reading of Rule 15(c)(3) adopted in some circuits, the plain language of Rule 15(c)(3) does not purport to limit the applicability of relation-back to circumstances in which the correction of a mistake regarding the proper identity of a party results in the substitution of one defendant for another. Instead, the rule sets forth the circumstances under which an "amendment [that] changes the party or the naming of the party against whom a claim is asserted" will relate back. In the instant case, Alberts seeks to change the party against whom his claim is asserted to the extent the existing defendant, AJG, asserts, and the court finds, that AJG was not the initial transferee of the subject payments.

Although Alberts continues to pursue the entire $1,015,873.29 claim against AJG, it is evident that Alberts is pursuing his claims against the Added Defendants and AJG in the alternative. Only after the court determines which party was the initial transferee with respect to any given portion of the alleged transfer will Alberts be in a position to ascertain which party or parties are, in fact, the proper defendants in this action. Alberts should not be prevented from pursuing his claims in the alternative against both parties pending the court's resolution of that question.

■ However, to the extent that AJG was the initial transferee of the dollars transferred, Rule 15(c)(3) may not be employed by Alberts to pursue the Added Defendants under 11 U.S.C. § 550(a)(2) as subsequent ("immediate or mediate") transferees from AJG of the same dollars for which AJG was the initial transferee. As to such transfers, Alberts did not make a mistake in suing AJG as liable.

In this adversary proceeding, as is common when a mere conduit defense is raised in a § 550 action, the defense is partial (for example, not extending to any commissions AJG retained as an insurance broker), goes to only a portion of the subject payment, and does not erase the possibility that AJG was the proper defendant to this adversary proceeding in the first instance. It is likely AJG's burden—not Alberts'—to demonstrate the applicability of the mere conduit defense, and the court may yet find that AJG was, in fact, the initial transferee with respect to all of the subject payments, notwithstanding AJG's assertion of a mere conduit defense. Indeed, whether AJG asserts the defense with respect to some or all of the payments, under both scenarios it could turn out that Alberts has made no mistake at all in his naming of AJG as the sole initial transfer-

join insurance company as a defendant to his complaint, originally brought only against the insurance agent, because Sixth Circuit precedent "holds that an amendment which adds a new party creates a new cause of action and there is no relation-back to the original filing for purposes of limitations."); *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 218 (6th Cir. 1978) ("amendments which add a party to the original suit cannot relate back for limitations purposes.").

**8.** *See Miracle of Life, LLC v. North American Van Lines, Inc.*, 368 F.Supp.2d 499 (D.S.C. 2005) (observing that the plain language of Rule 15(c)(3) only contemplates relation-back

when a new party is substituted for an existing party, and finding that to be the clear precedent in the Fourth Circuit); *Onan v. County of Roanoke*, 52 F.3d 321 (4th Cir. 1995) (unpublished) ("Rule 15(c)(3) permits a plaintiff to name a new defendant *in place of* an old one, but does not permit a plaintiff to name a new defendant *in addition to* the existing ones.")(emphasis in original).

**9.** *See, e.g., Hechinger Liquidation Trust v. Cooper Bussmann, Inc. (In re Hechinger Investment Co. of Delaware)*, 297 B.R. 390 (Bankr. D.Del.2003).

ee for the entire alleged preferential payment.

A reading of Rule 15(c)(3) that would preclude relation-back on the mere basis that the existing defendant may still be liable under what now present themselves as alternate theories as to who was the initial transferee would render Rule 15(c)(3) uniformly unavailable in cases such as this. Mere conduit defenses such as that raised by AJG typically alter liability based on the happenstance of the legal obligation governing the initial recipient's subsequent transfer of the subject funds to third parties, of which the bankruptcy trustee commonly has no direct knowledge. It is on that basis alone that § 550 liability, in instances such as this, then becomes splintered among several parties notwithstanding that the subject transfer was made to only one individual. The mere conduit defense thus leaves plaintiffs unusually vulnerable to mistakes arising from their lack of knowledge that anyone other than the initial recipient of a transfer is a potential target of the § 550 recovery action.

Even upon discovering that subsequent payments made by an initial recipient of a transfer to a third party could alter the identity of the "initial transferee," a § 550–action plaintiff will typically still need to look to the bankruptcy court to resolve the legal question of who is, in fact, the "initial transferee." A rule that would categorically exclude mistakes of this nature from the definition of Rule 15(c)(3)—mistakes that have no underlying strategic explanation, typically involve information peculiarly within the control of the existing defendant (the initial recipient of the transfer) and the defendants sought to be added, and whose significance cannot be fully appreciated until the bankruptcy court rules on questions of fact and law—would be too narrow.

Furthermore, notwithstanding that Alberts seeks to recover the entire sum of $1,015,873.29 through the vehicle of a single adversary proceeding, the claims being pursued within this adversary proceeding are legally divisible to the extent different parties may be found to be "initial transferees" liable for the return of different portions of the alleged transfer. Indeed, each and every dollar that was transferred from the debtor to a third party gives rise to a separate § 550 claim. That Alberts has elected to pursue recovery of the transfers in a single action does not alter the fact that his right to avoid such transfers runs to each dollar individually, not to any particular sum in the aggregate. That the original complaint may have named AJG as the proper defendant as the "initial transferee" of a divisible portion of a transfer should not preclude Alberts from showing that he was entirely mistaken with respect to the proper identity of the "initial transferee" as concerns other divisible portions of that transfer. In effect, Alberts *is* substituting the Added Defendants as the defendants to the extent that AJG is determined not to be the "initial transferee."

Moreover, this judicial circuit has not expressly, or otherwise, adopted a rule requiring that an added defendant replace a previously named defendant in order for Rule 15(c)(3) relation-back to apply. *See Hall v. CNN America, Inc.,* 1996 WL 653839 at *5 (D.D.C., November 7, 1996)(unreported opinion) (amended complaint adding defendant and alleging that added defendant was jointly and severally liable with originally named defendants in wrongful death action related back under Rule 15(c)). *But see Nichols v. Greater Southeast Community Hosp.,* 2005 WL 975643 (D.D.C., April 22, 2005)("an amendment relates back if it arises from the original occurrence and the *substituted*

party received notice of the action within the relevant time period.")(emphasis added).

Because this court is not bound to follow the narrow reading of Rule 15(c)(3) adopted by courts in other judicial circuits, and because drawing a dispositive distinction between joinder and substitution in determining what constitutes a mistake is inconsistent with the plain language of the rule, the court rejects the argument that Alberts' failure to dismiss the claims against AJG when adding new defendants in the amended complaint renders Rule 15(c) relation-back *per se* inapplicable.

     (b) D.C. Circuit precedent does not preclude relation-back of an amendment that seeks to add a defendant of whose connection to the alleged conduct the plaintiff was previously entirely unaware.

▉▉▉ The Added Defendants are correct that in *Rendall–Speranza v. Nassim,* 107 F.3d 913 (D.C.Cir.1997), the Court of Appeals narrowly interpreted the word "mistake" as used in Rule 15(c)(3)(B). However, as discussed later, the precise narrow interpretation was that a Rule 15(c)(3)(B) mistake does not exist when a plaintiff was fully aware of the added defendant's identity during the limitations period. That narrow interpretation does not preclude relation-back where a plaintiff is altogether unaware of an added defendant's possible existence during the limitations period. *See Arthur v. Maersk, Inc.,* 434 F.3d 196, 209 (3d Cir. Jan.13, 2006) (a

Rule 15(c)(3)(B) mistake existed when "[t]he reason that these claims were not brought against the United States, the only potentially liable party, was that [the plaintiff] did not recognize the agency relationship between the companies [who were the original defendants] and the Navy."); [10] *Sparshott v. Feld Entertainment, Inc.,* 89 F.Supp.2d 1 (D.D.C.2000). Here, to the extent that AJG was a mere conduit, the Added Defendants who received the transfers were the initial transferees and hence the only appropriate defendants to sue, but Alberts' lack of knowledge led to his mistake in not suing them, thus making Rule 15(c)(3)(B) applicable.

In addressing what constitutes a Rule 15(c) mistake permitting relation-back in the context of a § 550 action where a mere conduit defense has been asserted, the court agrees with the approach adopted by the court in *Randall's Island Family Golf Centers v. Acushnet Co. (In re Randall's Island Family Golf Centers),* 2002 WL 31496229 (Bankr.S.D.N.Y.2002) (unpublished). In that case, the debtors filed a preference action against their insurance agent to recover an alleged preference payment made within the 90 days prior to the petition date. *Id.* at *1. The insurance agent represented fifteen separate insurers, and in its answer to the complaint, the defendant insurance agent asserted that it was a mere conduit for the alleged preference payment because the payment was an insurance premium due and owing to one of those fifteen insurers. *Id.*

---

**10.** The court observed (434 F.3d at 208) (citations omitted):

    It is of no consequence that [the plaintiff's] mistake resulted from lack of knowledge, rather than mere misnomer. Although a majority of courts have held that only a "misnomer or misidentification" of an existing party can constitute a "mistake concerning the identity of the proper party"

under Rule 15(c), there is no linguistic basis for this distinction. A "mistake" is no less a "mistake" when it flows from lack of knowledge as opposed to inaccurate description. Both errors render the plaintiff unable to identify the potentially liable party and unable to name that party in the original complaint.

The amendment to add the insurer was sought after the two-year limitations period had expired, and the claim against the new party was time-barred unless the amendment was found to relate back to the original complaint. *Id.* The court held that the debtors' original misidentification of the initial transferee of the preference payment sought to be recovered constituted a mistake within the meaning of Rule 15(c)(3) and the claim against the insurance company therefore related back to the date of the original complaint. In so holding, the *Randall's Island* court distinguished cases such as the one before it from cases in which "the plaintiff knows everything he needs to know to name the new party at the time of the pleading, and cannot point to any subsequent factual discovery—except, perhaps for the new party's deeper pockets—to satisfactorily explain the earlier omission." *Id.* at *3.

The *Randall's Island* court ultimately found that there was no basis upon which to conclude that the debtors knew that the insurance company was the initial transferee of the alleged preferential payment but nonetheless chose to sue the insurance agent. *Id.* at *5. Instead, the court found that the debtors intended to sue the initial transferee, who they mistakenly believed to be the insurance agent, and added the insurance company when they discovered the misidentification. *Id.* This, according to the *Randall's Island* court, constituted a mistake within the meaning of Rule 15(c)(3). *Randall's Island* is not at odds with the precedent in this circuit, which has yet to squarely address this issue, and offers a well-reasoned approach to the difficult question of how to treat a misidentification with respect to the "initial transferee" in a § 550 action.[11]

The facts of *Rendall–Speranza* are distinguishable from the case at bar in that the Added Defendants in this case were not known to Alberts until shortly before he amended his complaint, whereas the plaintiff in *Rendall–Speranza* was well aware at the outset of commencing his action that IFC, the defendant it attempted to add later, had a relationship to the transaction at issue.[12] The *Rendall–Speranza* court held that Rule 15(c) relation-back did not apply, reasoning that the plaintiff's proposed interpretation of a mistake in identity did "not serve the evident purpose of the rule, which is to avoid the harsh consequences of a mistake that is neither prejudicial nor a surprise to the misnamed party." *Id.* at 918. The court

---

**11.** Although a different conclusion was reached by the court in *Leitch v. Lievense Casualty & Surety Co. (In re Kent Holland Die Casting & Plating, Inc.)*, 126 B.R. 733 (W.D.Mich.1990), *aff'd*, 928 F.2d 1448 (6th Cir.1991), that case was decided under Sixth Circuit precedent that categorically rejects any finding of mistake where the added defendants do not displace the original defendant. As discussed above, this court is not bound by such a requirement and therefore finds the case inapposite.

**12.** In *Rendall–Speranza v. Nassim*, an employee of the International Finance Corporation ("IFC") sued a co-worker for battery and emotional distress and later sought to amend the complaint to add the IFC as a defendant. The amendment was sought only after the

IFC filed an *amicus curiae* brief in which it stated that the defendant's alleged conduct was appropriate under IFC policy because it was committed in the course of preventing the plaintiff from stealing IFC files. *Rendall–Speranza*, 107 F.3d at 915. According to the plaintiff, it was only after this revelation that she first had reason to believe the IFC might also be liable for the battery. *Id.* at 917. Thus, notwithstanding that the statute of limitations had already run, the plaintiff argued that the amended complaint related back under Rule 15(c) to the filing of the original complaint because the plaintiff's failure to name the IFC as a defendant in the original complaint was due to "a mistake concerning the identity of the proper party." *Id.* at 917.

relied upon the Advisory Committee Notes (1991), which state that "Rule 15(c) deals with 'the problem of a misnamed defendant,'" and further observed that "[n]othing in the Rule or in the Notes indicates that the provision applies to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged." The court thus held that "the plaintiff's attempt belatedly to name the IFC as a defendant because she had earlier failed to appreciate that the IFC might be liable is not an amendment based upon 'a mistake of identity' so as to relate back to the date of the original complaint." *Id.* at 919. Here, Alberts did not simply fail to identify a theory of liability upon which a party known to him could also be named as a defendant. Rather, only upon revelations made by AJG in its answer to the complaint did Alberts become aware that a conduit relationship might exist between AJG and the Added Defendants that would make those Added Defendants the actual "initial transferees" of the dollars transferred within the meaning of § 550(a)(1).

Similarly, *Grigsby v. Johnson,* 1996 WL 444052 (D.D.C. May 14, 1996), another opinion relied upon by the Added Defendants, is distinguishable and must be read in the context in which that case was decided.[13] To the extent the opinion expressed an even narrower interpretation of Rule 15 than *Rendall–Speranza,* that view was *dicta* and does not withstand scrutiny.[14]

The court similarly finds distinguishable, if they have not been overruled by the Court of Appeals in *Arthur v. Maersk, Inc.,* two decisions in the Third Circuit

---

**13.** In *Grigsby,* a clerical worker filed a lawsuit against her employer claiming she was subject to sexual harassment in the workplace. *Id.* at *1. The plaintiff subsequently amended her complaint to add her supervisor as a defendant in his individual capacity. *Id.* The court held that the failure to name the plaintiff's supervisor as a defendant within the limitations period was not a mistake and the amended complaint could therefore not relate back. As in *Rendall–Speranza,* the plaintiff in *Grigsby* was aware of the added defendant's role in the alleged misconduct, and the court's holding relied in large part on its determination that the plaintiff's "decision not to name [her supervisor] must be viewed as a matter of choice not mistake." *Grigsby,* 1996 WL 444052, at *6 (D.D.C.). *Grigsby,* like *Rendall–Speranza,* is thus distinguishable from the case at bar because here there is no indication that Alberts was previously aware that post-transfer transactions between AJG and third parties gave rise to the possibility that someone other than the original recipient of the transfer might be the initial transferee.

**14.** In dicta, the *Grigsby* opinion cites to *Barrow v. Wethersfield Police Dept.,* 66 F.3d 466, 470 (2d Cir.1995), for the proposition that "[e]ven where the plaintiff fails to originally name a defendant because he lacks knowl-

edge of their identity, it is not for purposes of Rule 15(c)(3)(B) a mistake entitled to relation back." *Grigsby,* 1996 WL 444052, at *5 (D.D.C.). At first glance, such a proposition would appear to bar relation-back in a situation such as this where the plaintiff concedes that his failure to name the additional defendants resulted entirely from his lack of knowledge. Yet in *Barrow,* the authority relied upon by *Grigsby,* the lack of knowledge at issue concerned the plaintiff's lack of knowledge as to the specific identity of the ten officer defendants more generally identified in the complaint with the placeholder "John Doe." As is standard in John Doe cases, the plaintiff understood the need to ascertain the perpetrators' identities and he simply lost the race against time by failing to do so before the statute of limitations expired. *See also Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548 (7th Cir.1996) (John Doe case); *Worthington v. Wilson,* 8 F.3d 1253 (7th Cir.1993) (John Doe case). The lack of knowledge alleged by the trustee in this case is more fundamental in nature, and goes to the very existence of additional parties coming within the orbit of this § 550 action. Without any knowledge concerning post-transfer transactions between AJG and third parties, Alberts had no basis upon which to believe any party other than AJG was the initial transferee.

which the Added Defendants contend support their position, *Mailey v. SEPTA,* 204 F.R.D. 273 (E.D.Pa.2001),[15] and *Hechinger,* 297 B.R. at 394–95.[16]

To the extent, however, that AJG *was* the initial transferee, Alberts made no mistake in suing AJG. With regard to such dollars, as in *Rendall–Speranza,* Alberts cannot be permitted to add as defendants the Added Defendants as there was no mistake in suing AJG regarding those dollars transferred to AJG as to which it was in fact the initial transferee. His pursuit of the Added Defendants to the extent they *were* the initial transferees is, in contrast, permitted by Rule 15(c)(3).

    4.  The Added Defendants knew or should have known, within the time period provided for under Rule 4(m) that, but for Alberts' mistake, they would have been named as defendants.

    In addition to requiring that the name-changing amendment be the result of a mistake in identity, Rule 15(c)(3)(B) further requires that, within the time period provided for under Rule 4(m) for service of the summons and complaint, that defendants added through the late-filed amendment knew or should have known that, but for that mistake concerning the identity of the proper party, the action would have been brought against them within the limitations period. When the Added Defendants were served with the amended complaint—which the court has determined happened well within the period allotted under Rule 4(m) as extended by the court—the Added Defendants were put on express notice that they were now named as defendants in this action. Because the Added Defendants received such notice through actual service of the amended complaint, not through constructive or less direct means, there can be no doubt that at that juncture they knew Alberts was pursuing his claims against them. If not already apparent that the

**15.** The court in *Mailey* precluded relation-back notwithstanding the plaintiff's complete lack of prior knowledge that the construction companies sought to be added were working in the area where the alleged injury took place. It held that the failure timely to name the companies as defendants was not a mistake and the amendment would not relate back because "Rule 15(c)(3) is not intended to provide a way to avoid the consequences of the statute of limitations by allowing a plaintiff to bootstrap a time-barred claim **against a new, unrelated party** to a timely claim brought against the original defendants." *Id.* at 275 (emphasis added). Here, however, the Added Defendants are related: they are sued as *initial recipients of transfers to the extent that AJG was a mere conduit.* The court in *Mailey* recognized that an amendment will be permitted to relate back if an "identity of interest" test, linking the originally named party to the party sought to be joined, is satisfied, as in the case of suing an employee instead of his employer or vice versa. Here there is such a link: AJG transmitted the payments to the Added Defendants who are the true initial transferees to the extent that AJG was a mere conduit.

**16.** In *Hechinger,* the court followed *Mailey's* "separate, unrelated party" holding, and can be distinguished in that regard just like *Mailey.* It further ruled that Rule 15(c)(3) did not apply because the originally named defendant was the proper defendant with respect to at least part of the alleged preferential payment. To the extent that its rationale was that Rule 15(c)(3) only applies when there is a substitution of parties, this decision has already explained earlier why that rationale is invalid. Implicit if not explicit in much of the court's opinion, moreover, is that the plaintiff was aware of the added defendants' potential liability, but whether by choice or through inadvertence, failed to name those parties as defendants, and such failure—even if unintentional—did not constitute a mistake. The question of what happens when, as here, a plaintiff seeks to add defendants of whose identity and possible involvement he was entirely unaware, was not before the court.

late-filed amendment was the product of Alberts' prior mistake in identifying the initial transferee, upon reasonable inquiry the Added Defendants could easily have ascertained that they were added as defendants only after AJG asserted its mere conduit defense, which then put Alberts on notice that he had made a mistake, and caused him to amend his complaint.[17]

### III

The Added Defendants complain that the amended complaint fails to give them fair notice of the claims brought against them, and that the amended complaint should be dismissed accordingly. In assessing the requirements of "fair notice" under Rule 8(a) in the context of a § 550 action, the Added Defendants have asked the court to rely, *inter alia*, upon the standard articulated in *TWA, Inc. v. Marsh USA, Inc. (In re TWA, Inc.)*, 305 B.R. 228, 232 (Bankr.D.Del.2004), which states that the complaint must provide defendants with "(a)n identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer." Under this standard, which the court adopts as a reasonable formulation of what must be alleged to satisfy the fair notice requirement of Rule 8(a) in a § 550 action, the amended complaint fails to give the Added Defendants fair notice.

Although attached to the amended complaint is a list of checks and invoices identifying payments made to Arthur J. Gallagher & Co., and it can be reasonably inferred from the amended complaint that the Added Defendants are alleged to have benefitted, whether directly or indirectly, from these identified payments, nowhere in the complaint has Alberts identified any transactions (by date or otherwise) linking each of the Added Defendants to particular identified payments. There is likewise no indication of the specific amounts Alberts seeks to avoid and recover with respect to each Added Defendant.

Just as *TWA* articulates a useful standard for evaluating the adequacy of notice provided in a preference action complaint, it likewise offers a fair approach of relaxing the level of detail required to be pled when the plaintiff was not in a position to ascertain (and thus allege) certain facts without the benefit of discovery.[18] Alberts is in the midst of taking discovery and

---

**17.** In their reply, the Added Defendants argue that Alberts has improperly used his opposition brief to augment deficiencies in his amended complaint in defending against a Rule 12(b)(6) motion to dismiss. To the extent the court is asked to review the adequacy of the amended complaint under Rule 8 (an issue addressed in Part III below) the court will restrict its analysis to the allegations found within the four corners of the amended complaint. Yet to the extent Alberts' opposition urges that the amended complaint relates back under Rule 15(c)(3), an argument that seeks not to augment allegations in the original or amended complaint but rather to clarify the circumstances under which the pleadings were filed, his opposition is more properly understood as setting forth the mistake that gave rise to his adding the Addition-

al Defendants, which should have been obvious upon considering § 550(a)'s requirement of "initial transferee" status for AJG to be liable for any particular part of the transfer sought to be avoided.

**18.** As in *TWA*, the defendants are unlikely to suffer prejudice from an amendment that is made after the expiration of the limitations period, especially when the defendants are large sophisticated creditors who are unlikely to have lost or discarded records relating to the transactions as a result of delay, and where the filing of a Chapter 11 case likely put creditors generally on notice that they could eventually be the target of § 550 actions.

should shortly be in a position more fully to comply with the spirit of Rule 8. The court will require Alberts to file, within 35 days after entry of this opinion, a second amended complaint that complies with the notice requirements of Rule 8, and which will be permitted to relate back to the filing of the original complaint.

IV

For all of the reasons stated above, it is

ORDERED that the motions to dismiss (Docket Entry Nos. 26, 29, and 30) are DENIED, but Alberts shall file an amended complaint within 35 days after entry of this order that more fully complies with the spirit of F.R. Civ. P. 8, and the claims against the Added Defendants are limited to those transfers of dollars for which they were the "initial transferees."